IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ALCOA, INC. | § | |
| | § | |
| v. | § | |
| | § | |
| CONTECH CONSTRUCTION | § | |
| PRODUCTS, INC., CBC | § | |
| ENGINEERS & ASSOCIATES, LTD., | § | NO. A-05-CA-880 AWA |
| CTL/THOMPSON TEXAS, LLC, | § | |
| GLENN FUQUA, INC. AND | § | |
| MINE SERVICE, LTD. | § | |
| | § | |
| v. | § | |
| | § | |
| J.R. DAVIS & ASSOCIATES, INC. | § | |
| AND ACME BRIDGE COMPANY, INC. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Third-Party Defendant Acme Bridge Company, Inc.'s Motion for Summary Judgment (Clerk's Doc. No. 137). Having considered the motions, the Court enters the following Order.

**I.  BACKGROUND**

Plaintiff Alcoa, Inc. brought suit against numerous Defendants, including Mine Service, Ltd., after the collapse of a "Super-Span" located along State Highway FM 619. Alcoa and Mine Service had entered into an agreement on September 1, 2003, for Mine Service to provide various services relating to the construction of the infrastructure of the Three Oaks Mine Project, which included the FM 619 Super-Span, a project intended to divert traffic on the roadway so that mining work could be carried on unimpeded. In mid-September of 2003, Mine Service subcontracted with Acme Bridge Company, Inc. to provide, among other things, concrete work on the FM 619 Super-Span, including

pouring and installing the "footings" (which are, in the definition the Court was supplied with, "concrete and steel base foundations that carry the vertical and horizontal loads applied by the structures and transfer those loads to the concrete base upon which the footings are resting for support of the structure)." *See* Acme Bridge's Motion, Clerk's Doc. No. 137 at 9). On June 12, 2004, the FM 619 Super-Span collapsed. Alcoa subsequently initiated this lawsuit against Mine Service and the other Defendants for recovery of damages incurred due to lost mining operations, expenses in removing the collapsed Super-Span, investigating the cause of the collapse, and replacing the collapsed Super-Span. On March 31, 2006, Mine Service filed a Motion for Leave to Join Additional Parties, including Acme Bridge. Acme Bridge was served with Mine Service's Third-Party Petition on May 16, 2006, and filed a timely answer on June 5, 2006. Mine Service's petition seeks contribution and/or indemnity from Acme Bridge for their work on the footings.

Acme Bridge now moves for summary judgment against Mine Service. Acme Bridge argues that, since there is no evidence that the footings moved or otherwise contributed to the collapse of the FM 619 Super-Span (nor was it negligent or in breach of its contract with Mine Service) it is entitled to summary judgment.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). When the party seeking summary judgment is seeking summary judgment on a claim for which the non-moving party would bear the burden of proving at trial, the party seeking summary judgment bears the burden of showing that

there is an absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Coleman v. Houston Independent School District*, 113 F.3d 528, 533 (5th Cir. 1997). The party can do this by (1) submitting summary judgment evidence that negates the existence of a material element of the opposing party's claim or (2) by showing there is no evidence to support an essential element of the opposing party's claim. *Celotex*, 477 U.S. 322-25. After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

The Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor. *Coleman*, 113 F.3d at 533. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue of material fact is presented, and summary judgment is inappropriate. Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a proper motion for summary judgment. *Duffy v. Leading Edge Products, Inc,.* 44 F.3d 308, 312 (5th Cir. 1995). Rather, the non-moving party must set forth specific facts showing the existence of a "genuine" issue concerning every essential component of its case. *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir. 1997). The standard of review "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III. ANALYSIS

The central issue here, and the one that Mine Service hangs its hat on, is that David Cowherd's testimony and reports – Cowherd is CEO and Chief Engineer of CBC Engineers and Consultants, one of the Defendants also being sued by Alcoa – are enough to create a genuine issue of material fact about Acme Bridge's work on the footings; i.e., that their movement caused or was a contributing factor in the collapse of the Super-span. In a report written two days before the collapse (the report dealt with the concern that there was movement in the "backfill" of the Super-span), Cowherd, states, "it is possible that sliding of the footing has taken place," and indicated that further measurements should be taken "to determine if it appears that the footings have moved in an effort to isolate the actual cause of the drop in the backfill." *See* Mine Service's Response, Clerk's Doc. No. 146, Exh. 2.

In his deposition testimony, Cowherd indicated that he had performed calculations – on a post-it note which he later threw away – that indicated that the footings might be moving; when asked whether he knew for certain whether the footings were moving, he responded, "[i]t was a reasonable conclusion based on the data available to me that these footings have a high probability that they're moving." *See id.*, Exh. D-3 at 152-53. Mine Service, however, has not been able to recreate the calculations necessary to support these statements. Later in his testimony, Cowherd says, "I don't believe the cause of the collapse was due to the movement of the footings. I believe there's a possibility that the footings may have moved somewhat. I think the collapse is primarily that the backfill did not meet proper criteria." *See* Acme Bridge's Motion, Exh. TPD-2 at 168.

The Fifth Circuit has held that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden" in the summary judgment context.

*Douglass v. United States Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996). "Testimony based on conjecture or speculation is insufficient to raise an issue of fact to defeat a summary judgment motion because 'there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party . . . . If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" *Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994) (holding that testimony that defendant manufacturer *could* have made the defective heater not enough in face of nonmovant's summary judgment evidence that it did not manufacture the device) (quoting *Anderson*, 477 U.S. at 249-40).

      While Cowherd indicates that his "belief" that the footings "may have moved some" is based on calculations he did, his (and others) inability to recreate such calculations in response to the summary judgment motion, push Cowherd's conclusions into the realm of the kinds of "conclusory allegations, speculation, and unsubstantiated assertions" that are insufficient to defeat a summary judgment motion. *See Douglass*, 79 F.3d at 1429. Similarly, Cowherd's deposition testimony – e.g., "I don't believe the cause of the collapse was due to the movement of the footings. I believe there's a possibility that the footings may have moved somewhat" – epitomizes equivocal speculation. *See Ruiz*, 12 F.3d at 513. Mine Service attempts to have its summary judgment cake and eat it too. In its Response, Mine Service cherry-picks (to continue the culinary allusions) the Cowherd evidence, ignoring his deposition testimony that severely undercuts its position. Moreover, it cannot go without mentioning that Cowherd is an interested party in this litigation who would be delighted if there were indeed evidence that Acme Bridge is at fault for the collapse of the Super-span.

      On top of that, Acme Bridge amassed evidence that the footings were not connected to the collapse of the Super-span. When asked if he had witnessed the footings moving or sliding during

5

his time on the site, shape-control technician Jeffrey Floyd indicated that he had not, stating that "the footers were just fine." *See* Acme Bridge's Motions, TPD-6 at 120-21. Similarly, Richard Creech, who worked at the Super-span site, testified in his deposition that he did not see any movement of the footings nor cracks in the concrete of the footings when he inspected the site. *See id.* at TPD-7 at 64-65. Mike Green, commenting on a survey that had been taken after the collapse, stated that, while he could not comment on whether the footings had moved or not, he could conclude that the footings were in the locations called for by the design of the Super-Span after the collapse. *See id.* at TPD-8 at 303-03. This conclusion was backed by an email sent by Green in which he wrote: "Attached is the survey of the FM619 superspan footings which indicates that the footers haven't moved since they were built." *Id.* at TPD-13.

  Realizing that all of this taken together weighs heavily in Acme Bridge's favor, Mine Service indicates that summary judgment is premature because "[n]one of the parties have designated experts in this case, nor have any expert depositions been taken." *See* Mine Service's Response at 5. Therefore, it contends, *other* experts might agree with Cowherd's assessment. The Court finds this rationale unconvincing. As evidenced by the nearly half-foot stack of filings related to Acme Bridge's motion – it's motion, Mine Service's Response, and the Reply – the issue has been thoroughly deposed and analyzed, by engineers and non-engineers alike. Moreover, as Acme Bridge points out, it is telling that if the footings were a concern of the (numerous) other parties – and not just Mine Service – surely they would have filed similar responses to Acme Bridge's motion for summary judgment. None have done so.

## IV. ORDER

In light of the foregoing Memorandum Opinion **IT IS ORDERED** that Third Party Defendant Acme Bridge's Motion for Summary Judgment (Clerk's Doc. No. 137) is **GRANTED**, and that all Defendants take nothing by their claims against Acme Bridge Company.[1]  Acme's costs are taxed against these defendants.

SIGNED this 1st day of August, 2007.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

---

[1] Mine Service of course has a claim against Acme, as does Contech and CBC Engineers. As Acme Bridge notes, it appears that Fuqua and CTL/Thompson also have claims against it, and this Order applies to those claims, insofar as these parties' pleadings could be construed to state such a claim against Acme.